**Mercedes MARTINEZ, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–757C.**

United States Court of Federal Claims.

March 20, 2001.

---

Thomas F. Pepe, Coral Gables, Florida, attorney of record for plaintiff.

John C. Einstman, Washington, D.C., with whom was Assistant Attorney General David W. Ogden, for defendant.

## OPINION ON DEFENDANT'S
## MOTION TO DISMISS

GIBSON, Senior Judge.

### INTRODUCTION

Plaintiff herein, Ms. Mercedes Martinez ("plaintiff" or "Ms. Martinez"), is a real estate developer, whose case was transferred from the U.S. District Court for the Southern District of Florida (Miami) to the U.S. Court of Federal Claims on September 8, 1999. Thereafter, on October 8, 1999, she filed a three-count complaint in this court against the United States through the Department of Housing and Urban Development ("HUD" or "defendant") based on two separate theories grounded in contract, express and implied, and one theory grounded in implied-in-law contract, an equitable theory. The crux of plaintiff's allegations is that HUD breached a contract it had with plaintiff when it failed to authorize disbursements from a letter of credit under an outstanding completion assurance agreement, which was entered into by plaintiff, its mortgage lender, and the general construction contractor. The defendant (HUD) was not a signatory to this agreement, which was designed to insure completion of the related construction contract. HUD, however, did have limited involvement with the agreement, as will be explained fully hereinafter.

Defendant argues, in its motion to dismiss, that it was not in privity of contract, either expressly or impliedly, with plaintiff under any contract theory and, therefore, the complaint must be dismissed. Additionally, defendant argues that plaintiff's implied-in-law contract theory is an equitable issue not properly before this court. Lastly, defendant seeks dismissal of all counts based on the statute of limitations. For the reasons stated herein, the court orders the dismissal of Counts I and II on the grounds of lack of subject matter jurisdiction; the court also orders a transfer, pursuant to 28 U.S.C. § 1631, of Count III, the equity count, back to the U.S. District Court for the Southern District of Florida, the proper forum to hear said count; and, finally, the court denies defendant's motion to dismiss all three counts based on the statute of limitations.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Ms. Martinez is a trustee and former general partner of Blue Ridge Development, Ltd. ("Blue Ridge" or, interchangeably, "plaintiff"), a dissolved Florida limited partnership which owned a piece of real property located in Florida known as "Casa del Lago" ("the property"). In order to finance the development of the property into a 384–unit, multifamily, moderate income apartment complex, Blue Ridge obtained a guaranteed loan of $17,800,000 from Professional Mortgage Company ("the Lender") on April 10, 1987. The loan was guaranteed by HUD for certain consideration by plaintiff, including the proviso that the property would be available for moderate income residents.

To develop the unfinished property into a housing complex, Blue Ridge entered into a construction contract with Cipicorp Construction, Inc. ("the Contractor") to serve as the general contractor. Pursuant to HUD regulations, the Contractor executed a Completion Assurance Agreement ("CAA") on April 10, 1987, using a HUD approved form, with both Blue Ridge and the Lender. HUD was not a signatory to the CAA, which was designed to insure completion of the construction contract and to protect both Blue Ridge and the Lender in the event of the Contractor's default. It is important to note, at this point, that the CAA is the pivotal document which is the focal point of the parties' dispute.

Under the CAA, the Contractor promised to deliver a letter of credit in the amount of $2,914,316 ("letter of credit funds" or "CAA

funds") to the Lender to be held in trust for purposes of funding the CAA. In other words, the letter of credit, under the CAA, was to be used to secure and indemnify the Lender, Blue Ridge, or their assigns for any expense, loss, or damage suffered or sustained as a result of any default by the Contractor. If such a default occurred, however, the CAA dictated that HUD had to approve any withdrawals against the letter of credit before said monies could be disbursed to the Lender and/or Blue Ridge.

The CAA further provided that the letter of credit funds, held in trust, were to be distributed in the following *specific* order: first, to the Contractor during the course of the construction as may be deemed necessary by HUD; second, to Blue Ridge such portion, as deemed necessary by HUD, to recover any overpayment to the Contractor; third, to the Contractor upon final endorsement by HUD that the construction was adequately completed; and finally, to the Lender, by HUD's approval, in the event of a default by the Contractor, to be used by the Lender to indemnify the Lender and Blue Ridge for any loss, damage, or expense suffered by such default.

Additionally, and of great importance, the CAA allowed the Lender to assign its rights, along with Blue Ridge's rights, to the letter of credit funds in the event of a default by the Contractor. The following language contained in said agreement expressed this provision:

> [n]otwithstanding any of the provisions herein contained, it is expressly understood and agreed by all the parties thereto that in the event of a default by the Contractor in any of its obligations under the Construction Contract, the entire fund or balance remaining therein may, at the option of the Lender or the Commissioner [of HUD], be paid to the Commissioner [of HUD] together with an assignment of *all rights* hereunder granted to the Lender *and* the Owner [Blue Ridge or plaintiff].

CAA, April 10, 1987 (emphasis added).

Furthermore, the CAA required that the Contractor include within all of its subcontracts a provision in which individual subcontractors agreed to waive their rights to file mechanics' liens on the developing property. Apparently, the Contractor failed to do so with at least one subcontractor, who, on January 5, 1989, filed a mechanic's lien against the property. Plaintiff alleges that this failure on the part of the Contractor is one of many defaults committed by it on the construction contract. Moreover, the filings in this court, and the record as transferred from the U.S. District Court for the Southern District of Florida, indicate that the Contractor likely did default in its performance of the contract in other ways as well, including—failure to correct major defects in the construction, false representations in its requisitions, and receiving overpayments from the Lender based on entirely fraudulent statements. At this time, the court will not pass on the accuracy of these allegations and will assume, according to the law governing motions to dismiss, discussed *infra*, that they are true for the purposes of deciding this instant motion.

As a result of the Contractor's alleged defaults, Blue Ridge made a demand on HUD, in January of 1989, to authorize the Lender to release completion assurance funds in the amount of approximately $650,000 for the repair of construction defects and to reimburse Blue Ridge for the *overpayments made to the Contractor.* HUD responded, by letter dated April 17, 1989, that it would not release any monies at that time but it would consider the request and make a decision at a later date. It is interesting to note that, while HUD has never paid plaintiff any portion of these monies, it has never, as far as the papers submitted in this case indicate, *formally* denied release of the completion assurance funds for the purposes stated above. Moreover, the court gleans from the filings in this case that HUD was apparently less than forthright in its treatment of plaintiff.

Also in January 1989, Blue Ridge missed a mortgage payment on the construction loan and went into default.[1] As a result of this

---

1. Although not important for the instant decision on this motion, it is interesting to note that defendant alleges plaintiff never made a *single* payment on the mortgage loan.

default, the Lender, shortly thereafter, demanded that HUD pay the amount of the loan and accept an assignment of the mortgage. Such assignment was executed by the Lender on June 1, 1989, and stated, in relevant part, that the Lender "does hereby sell, transfer, assign, and set over unto [HUD] ... *all right, title, and interest in and to* the following documents: (1) Completion Letter of Credit No. 8–6145, issued by Professional Bancorp Mortgage Co., dated June 10, 1987, in the amount of Two Million Nine Hundred Fourteen Thousand Three Hundred Sixteen ($2,914,316.00) dollars...." Assignment of Letters of Credit Document, June 1, 1989 (emphasis added).

In September 1990, HUD, already the owner of the mortgage of the property via assignment, purchased the Casa del Lago property as "lien foreclosure judgment-holder" at the foreclosure sale. Blue Ridge did not object to the sale until after it was completed, when it filed a Rule 60(b) motion in the U.S. District Court for the Southern District of Florida to vacate the sale. This motion was subsequently denied and the foreclosure sale confirmed by said court.

As a result of all of the foregoing events, Blue Ridge filed a complaint in the U.S. District Court for the Southern District of Florida on June 13, 1989. The complaint in that case initially named only the Contractor, sub-contractors, and Lender, but was amended later to include the United States. As to HUD, the complaint specifically alleged that HUD breached its contract, its duty of good faith and fair dealing, and its duty of care, when it refused to disburse monies to plaintiff from the completion assurance fund and when it, allegedly, authorized overpayments to the Contractor. On January 29, 1991, the U.S. District Court for the Southern District of Florida dismissed all counts against the United States, for lack of subject matter jurisdiction, finding that the claims were contract claims governed by the Tucker Act.

Subsequently, on December 1, 1994, the plaintiff in the instant case, as trustee of Blue Ridge, filed another complaint in the U.S. District Court for the Southern District of Florida, naming HUD, including its Secretary, as defendants. This second District Court action, which had "little, if any, practical difference [from the first action]," contained four (4) counts, alleging, in sum, that: I) HUD violated the National Housing Act; II) HUD breached a contract it had with the plaintiff; III) HUD was liable under the Federal Tort Claims Act; and IV) HUD was unjustly enriched. *Martinez v. Cisneros*, 94–2563–CIV–HOEVELR, 12 (S.D.Fla.1998). The U.S. District Court for the Southern District of Florida, on August 11, 1998, dismissed counts II, III, and IV on the grounds of *res judicata*, to wit, that it lacked subject matter jurisdiction, and held as such in the prior January 29, 1991 decision. Additionally, the District Court dismissed count IV, unjust enrichment, for failure to state a claim. As for count I, which alleged violations of the National Housing Act, the U.S. District Court for the Southern District of Florida dismissed it, with prejudice, for failure to state a cause of action.

In dismissing counts II, III, and IV, the District Court noted that "because Plaintiff is alleging various claims founded upon a contract with the United States (in excess of $10,000), the United States Court of Federal Claims had exclusive jurisdiction over Counts II, III[2], and IV." *Id.* Accordingly, the U.S. District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1631, transferred plaintiff's case, as to the three counts, to this court on September 8, 1999. The court did such in a May 27, 1998 order, which denied plaintiff's motion for reconsideration as moot and concurrently ordered the three apparently resurrected counts transferred, in essence, reversing and vacating its decision to dismiss so it could transfer the case. As a consequence of the transfer, plaintiff filed a complaint in this court on October 8, 1999, and an amended complaint on March 6, 2000.

Plaintiff's complaint, in its final form, alleges three counts against HUD, to wit: (I) HUD breached both an express contract it had with the plaintiff and its implied duty of good faith and fair dealing; (II) HUD breached an express contract it had with the

---

2. The U.S. District Court for the Southern District of Florida found that the purported tort claim under Count III was essentially a breach of contract claim. *Id.*

plaintiff after the Lender assigned the mortgage rights to HUD; and (III) HUD was unjustly enriched with money owed to plaintiff, essentially a breach of an implied-in-law contract. As a result of HUD's actions under these three counts, plaintiff requests judgment against HUD in an amount up to $2,914,316, the total of the CAA fund.

On April 4, 2000, in lieu of filing an answer pursuant to Rule 12 of the rules of this court, defendant filed a motion to dismiss all three counts on the ground of lack of subject matter jurisdiction (Rule 12(b)(1)) and Count II on the ground of failure to state a claim upon which relief can be granted (Rule 12(b)(4)). Plaintiff responded to defendant's motion on May 8, 2000, and defendant replied to the response on May 18, 2000. This opinion addresses defendant's motion to dismiss in toto, but focuses the discussion on dismissal for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), as that is the ground the court deems is most proper for addressing all of plaintiff's counts considering the circumstances of this matter.[3]

## DISCUSSION

Defendant's April 4, 2000 motion for dismissal of plaintiff's complaint for lack of jurisdiction, under Rule 12(b)(1), can be divided into two major arguments: (A) statute of limitations, and (B) lack of jurisdiction over the subject matter, to wit, plaintiff's equity and contract claims. These main positions will be considered seriatim, following a discussion of the relevant law relating to both.

THE COURT'S JURISDICTION

Jurisdiction over the subject matter in this case is initially conferred on this court by the Tucker Act, which requires that a plaintiff claim an independent substantive right enforceable against the United States. 28 U.S.C. § 1491. It does not, however, by itself "create any substantive right enforceable against the United States for money damages." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), *quoting United States v. Testan,* 424

U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). As such, to launch a viable claim in this court under the Tucker Act's granting of jurisdiction, a plaintiff must find an express waiver of sovereign immunity by the government, which "cannot be implied but must be unequivocally expressed." *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995), *quoting United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

The Tucker Act states, in relevant part, as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress ... or upon any *express or implied contract* with the United States...."

28 U.S.C. § 1491(a)(1) (emphasis added). Therefore, "[f]or a plaintiff's claim to be jurisdictionally sound, there must exist a ... contract, distinct from the Tucker Act itself, that specifically allows the monetary relief plaintiff requests." *Son Broadcasting, Inc. v. United States,* 42 Fed.Cl. 532, 535 (1998). Thus, in this instant case, the waiver of sovereign immunity and the substantive actionable right given to the plaintiff comes from the Tucker Act's clause, as stated above, and the substantive provisions of the contract plaintiff allegedly had with HUD, respectively.

When evaluating a Rule 12(b) motion to dismiss, such as the one here at bar, the court should construe the allegations of the complaint favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (abrogated on other grounds). Evaluating the complaint in this manner is required regardless of whether the motion to dismiss is one for failure to state a claim or for lack of subject matter jurisdiction. *Id.* Thus, in rendering our decision, the court will presume that all of plaintiff's factual allegations are true, including HUD's actions regarding the disbursement of the CAA funds and the Contractor's defaults. *Forest-*

---

**3.** As the court deems dismissal pursuant to Rule 12(b)(1), lack of jurisdiction, is the most proper ground for dismissal of Count II, it will not consider defendant's argument to dismiss Count

II for failure to state a claim upon which relief could be granted under Rule 12(b)(4). As such, we will review our subject matter jurisdiction, *sua sponte,* as to said count.

*ry Surveys and Data v. United States,* 44 Fed.Cl. 485, 490 (1999).

If, however, the motion to dismiss for lack of subject matter jurisdiction challenges the truth of the jurisdictional *facts* in the complaint, the court may look beyond the pleadings to consider all available evidence—in the instant case the parties' filings—in order to determine jurisdiction. *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991). Similarly, if the court has doubts regarding jurisdiction, it may look at all the evidence presented to satisfy itself regarding the jurisdictional facts. *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461–62 (Fed. Cir.1998). Indeed, the court may, and often must, find facts on its own.

Subject matter jurisdiction may be challenged at any time by the parties, the court *sua sponte,* or even on appeal. *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir. 1993). The plaintiff, of course, bears the burden of establishing subject matter jurisdiction and must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir.1988). Accordingly, mindful of plaintiff's burden to establish the jurisdiction of this court, as well as our own duty to ensure the legitimacy of our jurisdiction, we consider all the evidence presented for this court's consideration in evaluating the government's motion to dismiss, even evidentiary matters outside of the pleadings. *Indium Corp. of Am. v. Semi–Alloys, Inc.,* 781 F.2d 879, 884 (Fed.Cir.1985). Indeed, if a defendant challenges jurisdiction, the plaintiff cannot rely merely on allegations in the complaint but must instead bring forth relevant, competent proof to establish jurisdiction. *Reynolds,* 846 F.2d at 747.

It is important to understand, however, that the court's task on this issue is not to decide "whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. This is so even if the pleadings facially show that "recovery is very remote and unlikely." *Id.* Accordingly, the court will implement the foregoing standards, first, in section A, by addressing defendant's argument, under Rule 12(b)(1), that plaintiff's complaint falls outside of the statute of limitations. Secondly, in section B, the court will similarly address the propriety of exercising its jurisdiction as to plaintiff's equity and breach of contract claims under each of the three counts, seriatim.

## A. STATUTE OF LIMITATIONS

■ The government initially seeks to dismiss plaintiff's claims on the ground of lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), because her complaint violates the statute of limitations. Suits against the United States are subject to a six-year limitation. 28 U.S.C. § 2501. This six-year time bar on actions against the United States is "a jurisdictional requirement attached by Congress as a condition on the government's waiver of sovereign immunity...." *Hopland Band of Pomo Indians v. United States.* 855 F.2d 1573, 1576–77 (Fed.Cir.1988). Because the statute of limitations affects this court's subject matter jurisdiction—rather than being an affirmative defense—the requirement is strictly construed and under no circumstances may it be waived by the court. *Laughlin v. United States.* 22 Cl.Ct. 85, 99 (1990), *aff'd,* 975 F.2d 869, 1992 WL 164266 (Fed.Cir.1992); *Catellus Dev. Corp. v. United States.* 31 Fed.Cl. 399, 404 (1994).

■ To prove that her claim is not time-barred, plaintiff must show that her claim first accrued within six years of the filing of the complaint. *LaMear v. United States,* 9 Cl.Ct. 562, 569 (1986), *aff'd,* 809 F.2d 789 (Fed.Cir.1986). Under this threshold analysis, a claim first accrues when "all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action." *Hopland* 855 F.2d at 1577. In other words, a claim has accrued when the last event transpires that gives plaintiff a cause of action. For breach of contract actions, the claim generally accrues at the time of the breach. *Brighton Village Associates v. United States,* 52 F.3d 1056, 1060 (Fed.Cir.1995). As stated in the prior section, for this court to determine the date of the breach, a factual issue, it will consider all the evidence presented in order to satisfy itself regarding the appropriateness of exer-

cising jurisdiction. *RHI Holdings, Inc.*, 142 F.3d at 1461–62.

Defendant launches two arguments supporting its theory that plaintiff's claim violates the statute of limitations. First, defendant argues that because "plaintiff fails to plead the dates of the alleged occurrences, the Court may infer such failure as an admission that the occurrences took place outside of the six-year statute of limitations.... [therefore] this Court should dismiss Ms. Martinez's amended complaint, with prejudice, due to the inferred expiration of the applicable statute of limitations caused by Ms. Martinez's failure to plead the dates of the events underlying her claims." Deft's Mot. to Dismiss, at 5. We can dispose of this first argument quite easily.

When the court looks at the totality of plaintiff's filings, pursuant to the above-ventilated standards advising us to look to all the available evidence, it is apparent that the earliest date of HUD's alleged breach was April 17, 1989, the date HUD first responded to and refused plaintiff's January 1989 request for partial disbursement of the CAA funds. Consequently, April 17, 1989 is the earliest date that the six-year clock on plaintiff's claim could have begun to run. Next, a filing date, or the date on which the six-year clock is to stop counting, if you will, needs to be determined. For that, the court looks to 28 U.S.C. § 1631, the statute authorizing transfers, which is unequivocal.

According to 28 U.S.C. § 1631, the transferred complaint "shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." In other words, the filing date of plaintiff's complaint in this court, which is October 8, 1999, *relates back* to the original filing date of the transferred U.S. District Court for the Southern District of Florida action, which is, as stated earlier, December 1, 1994. Thus, the date of the original District Court complaint is the date which this court will use in computing a filing date for statute of limitations purposes. Therefore, the period from April 17, 1989, the date of accrual, to December 1, 1994, is less than six years and well within the stat-

ute of limitations. Consequently, the court rejects defendant's argument that plaintiff's claims are too vague and thus should be dismissed as outside of the statute of limitations.

Defendant's second argument for dismissal, under the statute of limitations, is that the court should disallow 28 U.S.C. § 1631's "relating back" provision for determining the date of filing because plaintiff was on *notice* that her claims were jurisdictionally barred in the U.S. District Court for the Southern District of Florida when she filed her second complaint in that court in 1994 According to defendant, plaintiff should have known then that her claims were jurisdictionally barred because she already had a substantially similar complaint dismissed for lack of jurisdiction by the same court on January 29, 1991. In its May 22, 2000 reply to plaintiff's response to defendant's motion to dismiss, defendant states:

> [I]t is clear that Ms. Martinez was on notice as early as September of 1990 [during the proceedings of her first complaint] that the Southern District of Florida had no jurisdiction over these claims [against HUD], and that this Court [of Federal Claims] had jurisdiction over them. Having full knowledge of this state of affairs, Ms. Martinez filed the *same claims* in the Southern District of Florida in December of 1994, knowing that the court had no jurisdiction to hear those claims. She now comes before this Court [of Federal Claims] and argues that her frivolous filing in December of 1994 tolled the statute of limitations for her to file in this Court.

For the reasons stated below, the court rejects this "notice" argument.

Defendant's position is that because plaintiff filed a complaint in the U.S. District Court for the Southern District of Florida, first, on June 13, 1989, which was then dismissed on January 29, 1991, plaintiff should have known better than to file a similar complaint on December 1, 1994, in the same court rather than in the Court of Federal Claims. We hold that this scenario is not relevant. While it is true that the District Court stated, in its August 12, 1998 opinion, that the second case had "little, if any prac-

tical difference [from the first action]," it then transferred the case to this court. *See supra* at 5. If the District Court believed that the two actions were *exactly the same,* then it would and should have outright dismissed the second action on *res judicata* grounds, *with prejudice.* It did not do so. The fact that the first, 1989, case was dismissed outright in 1991, and the second, 1994, case was actually transferred here from the District Court in 1999, is prima facie evidence that the District Court considered the second case different enough from the first case to warrant a transfer to this Court. This situation, therefore, obviates defendant's "notice" argument.

Moreover, defendant actually assented to the transfer in 1999, as indicated by the following U.S. District Court for the Southern District of Florida statement contained in its May 27, 1999 order transferring the case—"there has been no opposition by the United States to a transfer." For defendant to now argue that it is being prejudiced is disingenuous. Furthermore, defendant does not cite any cases whatsoever on point, supporting its argument on this issue. What case law the court could find on the issue is in contravention to defendant's position. *Manieri v. Layirrison,* 1998 WL 458186, \*3 (E.D.La.) ("The curative [tolling] effects of ... § 1631 were intended to apply only in those circumstances where the action would have been *timely filed* in the transferee court at the time of filing in the transferor court."). Also, defendant does not cite any valid reason indicating how it has been prejudiced by the foregoing events. Finally, there is no indication in the record that plaintiff neglected to file in this court in 1994 solely to avoid the statute of limitations. As such, defendant is wholly incorrect that "the original complaint in this matter [for statute of limitations purposes] was filed with this court on October 6, 1999." Def't's Mot. to Dismiss, at 4. Accordingly, we reject defendant's argument that plaintiff's instant complaint falls outside of the statute of limitations because plaintiff was on notice, in 1994, that it should have filed in this court.

## B. LACK OF SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIM

Pursuant to Rule 12(b)(1), defendant seeks to dismiss plaintiff's Count I (breach of express and implied-in-fact contract) and plaintiff's Count III (unjust enrichment/breach of implied-in-law contract) because the court lacks subject matter jurisdiction over the allegations contained in the complaint under those counts. Regarding Count I, defendant argues that HUD was not in privity of contract with the plaintiff. As for Count III, defendant argues that unjust enrichment, or breach of implied-in-law contract, is a wholly equitable action that this court lacks jurisdiction to hear. For the reasons stated below, the court agrees with defendant's arguments but orders that Count III be transferred back to the U.S. District Court for the Southern District of Florida for proper adjudication. Regarding Count II (breach of express contract), the court, upon *sua sponte* review of its subject matter jurisdiction concerning said count, will dismiss it for lack of jurisdiction as plaintiff has also failed to establish privity of contract under this count.

As stated earlier, the court should evaluate a Rule 12(b) motion by construing the allegations in the complaint favorably to the plaintiff. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. Under this reasoning, the court will presume that all of plaintiff's factual allegations are true. *Id.* Furthermore, this court will consider all of the available evidence garnered from the parties' filings in order to determine if jurisdiction is proper. *RHI Holdings, Inc.,* 142 F.3d at 1461–62. Finally, the court will not decide, at this juncture, whether the plaintiff's claims would ultimately prevail, or even possibly prevail, in a trial on the merits, but only will decide that plaintiff's allegations are properly before the court. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. Considering the foregoing standards, we will now address subject matter jurisdiction under Counts I, II, and III, seriatim.

### 1. Count I—Breach of Express and Implied–In–Fact Contract

Plaintiff's Count I alleges that she had a contract with HUD under two self-sustaining

theories, including express written contract and implied-in-fact contract. Defendant counters that it was not in privity of contract with plaintiff under either theory and, therefore, plaintiff's claim under Count I must be dismissed for lack of subject matter jurisdiction. For the reasons stated herein, the court agrees with defendant.

■■■ The court must determine whether a valid contract under either theory did, indeed, exist between the parties. "A valid express contract requires that the following criteria have been met: a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." *Buesing v. United States*, 47 Fed.Cl. 621, 630 (2000), *citing Total Med. Management, Inc. v. United States*, 104 F.3d 1314, 1319 (Fed.Cir.1997). "Even without an express contract, there still may be an implied-in-fact contract if there is a meeting of the minds which can be inferred from [the] parties' conduct showing, in light of the surrounding circumstances, a tacit understanding between them." *Id.* (citations omitted). "Like an express contract, an implied-in-fact contract requires (1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity in offer and acceptance. An express offer and acceptance are not necessary, but the parties' conduct must indicate mutual assent." *Id.* (citations omitted).

Even before the above elements can be analyzed, though, privity between the parties at bar must be established as an initial threshold. In other words, the requirement of privity here simply mean that the alleged contract must actually be between the plaintiff and the government, and if such is not found, this court simply lacks jurisdiction to entertain these instant claims. *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed.Cir.1998), *cert. denied*, 528 U.S. 820, 120 S.Ct. 62, 145 L.Ed.2d 54 (1999). "[W]e are mindful that, in order to find privity of contract, we must find on the part of HUD the type of direct, unavoidable contractual liability that is necessary to trigger a waiver of sovereign immunity, the inevitable result of finding privity of contract." *Id.* at 1241 (cita-

tion omitted). It is on this initial requirement that plaintiff's instant action, indeed, fails.

Regarding plaintiff's allegation of an express written contract, she argues that the following three (3) HUD approved documents constitute the one written express contract she purports existed between the parties. They are: 1) the April 10, 1987 CAA, which contained the provision for the letter of credit fund central to plaintiff's claim; 2) the April 10, 1987 Regulatory Agreement, which is an agreement between HUD and plaintiff requiring plaintiff, *inter alia*, to only rent the finished property to certain income tenants in exchange for HUD's insuring the loan; and 3) the December 16, 1986 Commitment for Insurance of Advances, which is HUD's signed promise to plaintiff and the Lender that it is insuring plaintiff's mortgage on the property. Defendant argues that none of these documents, either alone or together, creates privity of contract between the parties regarding the CAA funds.

■■■ While it is true that each of these three documents are on HUD approved forms, they do not contractually bind HUD regarding the CAA funds for a variety of reasons. First, the CAA was not signed by HUD, as previously noted, *supra* at 3, but only by the Contractor, Lender, and plaintiff. It was designed to insure the completion of the construction and protect the plaintiff and Lender in the event of the Contractor's default, which, apparently, it did not accomplish. Even so, this document does not create an express binding relationship between HUD and plaintiff with regard to the letter of credit because HUD was not a signatory to it. As in *Cienega Gardens*, which is highly instructive to this court concerning the exact issues at bar, HUD was not a signatory to a Deed of Trust document and, therefore, said document did not create privity of contract between plaintiff and HUD for the subject matter contained therein. *Id.* at 1242 ("the incorporation of the regulatory agreement—which set forth obligations on the part of the Owner—into the rider to the deed of trust did not make HUD a party to the deed of trust."). The CAA at issue here is a close parallel.

■ Secondly, the Regulatory Agreement, which HUD actually did sign, does not bind HUD in contract with the plaintiff regarding the CAA funds. In fact, the Regulatory Agreement is a document that established plaintiff's obligations to rent the finished property to certain income tenants and was designed purely for HUD's benefit. The *Cienega Gardens* court, in discussing the same document, stated this clearly: "it was the Owner, not HUD, that assumed obligations under the regulatory agreement.... [and][t]he regulatory agreement did not incorporate any other agreement...." *Id.* As to the parties' obligations under the Regulatory Agreement at bar, there was a contract, but this contract was wholly unrelated to the CAA funds. Therefore, this agreement alone fails to establish privity between the parties regarding the CAA funds.

■ Finally, the Commitment for Insurance of Advances ("the Commitment"), which HUD signed and which does reference the other two documents, also does not establish privity between the parties regarding the CAA funds. The purpose of the Commitment was to bind HUD with regard to payment of the mortgage in the event of Blue Ridge's default, contingent on plaintiff executing the Regulatory Agreement and the CAA. Thus, under this agreement, HUD was insuring repayment of the Lender's loan in exchange for plaintiff's promise to follow HUD regulations it renting the property to certain income tenants and assuring HUD and the Lender of its completion. Plaintiff's only promised benefit from HUD, under this signed agreement, was simply a lower mortgage interest rate from the Lender because of HUD's guarantee to insure the loan.

The Commitment is substantially similar in form and purpose to the same named document in *Cienega Gardens. Id.* at 1239–40. For example, the court in that case stated: "[i]t has never been argued that HUD failed to provide mortgage insurance, as required by each 'Commitment for Insurance of Advances.' In other words, it is undisputed that HUD discharged its obligations to the Owners under the various commitments." *Id.* at 1241. This is similar to the situation in

the case at bar. HUD's obligation under the Commitment does not establish its intention to be expressly bound to any terms under the CAA, including the provisions governing the disbursement of the letter of credit funds. That the CAA also references the Commitment and the Regulatory Agreement is inapposite to the issue of HUD's intent to be bound by any provisions of the CAA, a document it failed to sign. Accordingly, we find that even when we consider the three documents together, to wit, the CAA, the Regulatory Agreement, and the Commitment, they do not even collectively establish privity of contract. Therefore, the court holds that there was no express written contract concerning the CAA funds between the parties. We now turn to plaintiff's argument that there existed an implied-in-fact contract between the parties regarding the CAA funds.

■ Plaintiff argues that HUD owed it an implied contractual duty of fair dealing and care because of HUD's intimate involvement with the CAA contract and because HUD acted as an arbiter under said agreement. Defendant argues that the factual circumstances do not create privity of contract between the parties and, therefore, there was no implied contract. Even when the court assumes that each and every factual allegation contained in the complaint is true, which it must, we conclude that there was no implied contractual relationship between the parties concerning the CAA funds.

Specifically, plaintiff states that "the Completion Assurance Agreement ('CAA') designated HUD as the arbiter to decide the amount of overpayment that had been made to the contractor and to authorize the trustee of the CAA trust funds to release such funds to the owner [plaintiff]." Pl.'s Reply to Deft's Reply to Pl.'s Supp. Resp. to Deft's Mot. to Dis., at 2. Furthermore, plaintiff states that:

... HUD prevented the Lender from paying these funds to the Owner when HUD failed to fulfill the duty it gave itself to act as the arbiter in this matter.

HUD had a contractual duty to make a determination as to the portion of the Fund necessary for the Owner to recover

any overpayments made to the Contractor....

HUD's consent to act as the arbiter was implied by its actions....

Pl.'s Supp. Resp. to Deft's Mot. to Dis., at 7 (emphasis added).

On this issue, the precedent of the *Cienega Gardens* case is highly instructive to us. In that case, the owners of various housing projects alleged that, because they had valid express contracts with HUD arising out of regulatory agreements, similar to the Regulatory Agreement at bar and discussed earlier, they also had an implied contractual relationship with HUD regarding deed of trust notes, which gave them prepayment rights on their mortgages and incorporated the regulatory agreements. 194 F.3d at 1242. The court made it clear, however, that HUD was not a signatory to the deed of trust notes, and that the regulatory agreements themselves did not "incorporate any agreement or provision addressing prepayment." *Id.* at 1241–42. Moreover, the *Cienega Gardens* court held that the foregoing relationship between the documents and the parties did not give rise to privity between the parties regarding prepayment rights because HUD did not indicate, either expressly or by implication, that it intended to be bound by any of the terms in the deed of trust notes. *Id.* at 1244.

For example, the *Cienega Gardens* court held that "HUD's involvement in the various transactions underlying this case, however, did not, as a matter of law, give rise to privity of contract with respect to the right to prepay the mortgage loan." *Id.* In explaining this holding the court stated the following:

> ... These cases do make it clear, however, that in order for the government to be liable for breach of contract, there must be privity of contract and that the degree of HUD involvement with a project does not create privity so as to allow suit against the government. The Owners' contention that HUD's involvement with the transactions at issue resulted in privity of contract thus fails.

The Owners did have contractual relationships with HUD via the various regulatory agreements. As seen above, however, the contract evidenced by each of the regulatory agreements was limited in scope to obligations on the part of the Owner that were in consideration for HUD having endorsed [insured] the ... loan to the Owner from its lending institution....

*Id.* at 1245. The court went on to say that, inasmuch as the contracts to which HUD was bound did not include or involve the mortgage prepayment provisions pursuant to which plaintiff was suing, HUD was, therefore, not in privity of contract with the plaintiffs concerning those provisions. *Id.*

The instant case is quite similar. It is true that HUD, under the CAA, had the right to approve or disprove disbursements to plaintiff from the CAA funds. Also, the CAA was memorialized on a HUD approved form and was referenced by the Commitment. Notwithstanding, it would take a herculean leap of reasoning for this court to hold that defendant, by signing the Regulatory Agreement and the Commitment, impliedly consented to be bound by the CAA. As such, this court rules, in conformity with the *Cienega Gardens* holding as expressed above, that HUD's involvement in the CAA funds did not imply that it intended to be bound by the terms of the CAA.

Plaintiff's "arbiter" argument is similarly rejected. As the U.S. Court of Appeals for the Federal Circuit has clearly stated, "[a] grant of benefits and subsequent oversight by HUD is insufficient to establish a contractual relationship between [plaintiff developer] and the government." *Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed.Cir.1994). The situation at bar is the same; HUD was simply acting as overseer and, perhaps, even "arbiter," to plaintiff's construction project, but its involvement in the CAA funds did not rise to the level of an implied contractual relationship.

Additionally, plaintiff's position that the now defunct regulation 24 C.F.R. § 221.542 (1983)[4], entitled "Assurance of Completion,"

---

4. Defendant stated, with regard to this citation, that "[t]he Government has been unable to locate

24 C.F.R. § 221.542 and is thus unable to respond to Ms. Martinez's argument...." Deft's

which required plaintiff to execute the CAA with the Contractor and the Lender, somehow creates privity of contract between the parties regarding the CAA funds is likewise rejected. This regulation was designed to protect mortgage lenders' and HUD's interests in obtaining the completion of moderate income housing by entities such as plaintiff who chose to privately undertake such projects for profit. It does not imply any promise on HUD's part to do anything concerning the required completion assurance monies and, most certainly, does not create privity of contract between these instant parties regarding said CAA funds. Accordingly, because plaintiff has failed to demonstrate that she was in privity of contract with HUD, either expressly or impliedly, under any valid theory discussed herein, her breach of contract claim under Count I fails and must be dismissed for lack of subject matter jurisdiction.

### 2. Count II—Breach of Express Contract (post-assignment)

■ Plaintiff's Count II is substantially the same as its breach of contract claim under Count I, except that Count II centers on the parties' alleged contractual relationship after the Lender's June 1, 1989 assignment of the mortgage and CAA funds to HUD. *See supra* at 4–5. After that time, plaintiff alleges that:

> HUD [had] stepped into the shoes of the Lender as trustee of the Completion Assurance Fund.... HUD, as trustee, [had] a contractual duty to comply with the Completion Assurance Agreement provisions and those provisions require that as between the Lender and the Owner [plaintiff] the trustee is required to first re-pay the Owner [plaintiff] to recover any overpayments made to the Contractor and thereafter to indemnify itself and Blue Ridge [plaintiff] for any loss, damage or expense caused by the Contractor's breach of its construction contract.

HUD breached its obligations by failing to pay Blue Ridge [plaintiff] for the over payments made to the Contractor.

Amended Compl. at 5. Under this argument, plaintiff claims that the June 1, 1989 assignment established a written express contract between her and HUD.

Defendant, on the other hand, argues that, even after the Lender's assignment of the mortgage and CAA funds, there was still no contract in existence between plaintiff and defendant because when the Lender executed the June 1, 1989 assignment, it assigned *all* of plaintiff's rights to the foregoing, as well as its own. This position is similar to defendant's argument, discussed in the prior section, that there was no privity of contract between plaintiff and HUD because there was no signed written document or implied relationship between the parties legally supporting a contractual relationship. The requirements of a valid express contract, including privity, discussed *supra* at 13–14, apply to Count II as well. After reviewing the parties' filings, the court agrees with defendant and will also dismiss this count for lack of subject matter jurisdiction.

The court is sympathetic to plaintiff inasmuch as the evidence in the record indicates that HUD's refusal to approve the release of monies, considering the ongoing situation regarding the construction, was inequitable. We also recognize that the record shows that HUD has not even formally explained why it has refused. Notwithstanding, the court cannot and will not hold that a contract had existed between the two parties because, in fact, it did not.

In reaching this conclusion, the court reviewed the plain language of the June 1, 1989 assignment document, which is unequivocal. It is well established that "[c]ontract interpretation begins with the plain language of the agreement." *PCL Construction Services v. United States,* 47 Fed.Cl. 745, 785 (2000) (citation omitted). "Whenever possible, courts look to a 'plain language' or 'plain meaning' interpretation of contractual documents." *Id.* For the court to be able to hold

---

Reply to Pl.'s Resp. to Deft's Mot. to Dis., at 11. The court notes that this regulation was, indeed, valid and operational at the time of the events in

issue, but that such is inapposite to the court's decision concerning this regulation's effect on the resolution of this case.

for plaintiff on this issue, it would have to find that, as a matter of law, the Lender's assignment somehow did not contain an assignment of plaintiff's rights as well as its own, which is contrary to the plain language of the June 1, 1989 assignment document and the CAA. We cannot find such.

For example, the CAA states, as quoted earlier, *supra* at 3, the following language: "in the event of a default by the Contractor ... the entire fund or balance remaining therein, may, at the option of the Lender or the Commissioner [of HUD], be paid to the Commissioner together with an assignment of *all rights* hereunder granted to the Lender *and* the Owner [plaintiff]." CAA, April 10, 1987 (emphasis added). This language, obviously, indicates that upon assignment of the CAA's letter of credit funds by the Lender, all rights to said fund, including plaintiff's, would be transferred to HUD. Furthermore, the assignment document itself clearly spells this out. As previously quoted, *supra* at 4–5, it states the following: "Professional Savings Bank [current name of Lender] ... does hereby sell, transfer, assign, and set over unto [HUD] ... *all right, title, and interest in and to* the following documents: (1) Completion Letter of Credit ... in the amount of Two Million Nine Hundred Fourteen Thousand Three Hundred Sixteen ($2,914,316.00) dollars...." Assignment of Letters of Credit Document, June 1, 1989 (emphasis added). It does not say that the assignment is for only the Lender's rights but *all* rights and interest in the CAA funds, which would also include plaintiff's rights. The plain language of the foregoing two documents clearly indicates that, when the Lender executed the assignment, it gave up its own rights and, concurrently, plaintiff's rights too.

As such, because there was an assignment of *all* of plaintiff's rights under the fund, plaintiff had no legal or contractual right to any of those monies. "Unless a contrary intent is manifest or inferable, an assignment transfers to the assignee [HUD] the assignor's *entire interest or rights* in the property." *United States v. G & T Enterprises*, 978 F.Supp. 1232, 1239 (N.D.Iowa 1997) (emphasis added) (citation omitted). This is true

even if HUD acted unfairly, which this court is inclined to believe, in not releasing any part of the $2,914,316 fund to Blue Ridge/plaintiff to correct defects in the construction. Therefore, the June 1, 1989 assignment document does not create privity between the parties because, after its execution, plaintiff had no more legal, express or implied, rights to the CAA funds. In other words, the assignment does not create a contract between plaintiff and HUD any more than the CAA itself or the alleged implied duty of care do, as discussed in the prior section. Consequently, the court holds that, under Count II, as well, plaintiff has failed to establish privity of contract and thus we must dismiss Count II, *sua sponte,* for lack of subject matter jurisdiction.

### 3. *Count III—Unjust Enrichment (Breach of Implied–In–Law Contract)*

In Count III, plaintiff initially alleged that, if the court holds that the Lender's assignment of the mortgage and CAA funds to HUD constitutes an assignment of not only the Lender's rights but of plaintiff's rights to the fund as well, "then, in such event, HUD has been unjustly enriched at the expense of the Owner [plaintiff]." Amended Compl. at 7. As such, plaintiff's complaint "demands judgment against HUD for the amount by which HUD has been unjustly enriched...." *Id.* at 8. In a later filing, dated May 8, 2000, however, "plaintiff concedes that the case law precludes the Court of Federal Claims from hearing a complaint that is based exclusively on an equitable theory [such as Count III]." Pl.'s Resp. to Deft's Mot. to Dismiss, at 15. Consequently, in said later filing, plaintiff requests this court "to transfer the case [Count III] back to the Federal District Court." *Id.* at 16.

■ Defendant argues, quite correctly, that the claim of unjust enrichment or breach of an implied-in-law contract, is a wholly-equitable action which is clearly outside of this court's jurisdiction. Regarding plaintiff's May 8, 2000 transfer request, defendant replied to such by stating that "Ms. Martinez *appears to concede in her brief that this Court is without jurisdiction to entertain* claims based upon unjust enrichment. Thus,

the Government will not address this issue further...." Deft's Reply to Pl.'s Resp. to Deft's Mot. to Dis., May 22, 2000, at 13 (citations omitted). The foregoing statement is defendant's only comment regarding plaintiff's request to transfer Count III back to the U.S. District Court for the Southern District of Florida, and this court does not interpret such to be a formal objection to said transfer request.

This issue can be disposed of quite easily. Defendant is, indeed, correct that this court is without jurisdiction to consider plaintiff's allegations under Count III. Jurisdiction in the Court of Federal Claims based on contract "extends only to contracts either express or implied-in-fact, and not to claims on contracts implied-in-law." *Hercules, Inc. v. United States,* 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996). Plaintiff's claim of unjust enrichment against HUD falls squarely in this classification and, as a result, does not belong here. Consequently, the court could dismiss Count III with prejudice. However, we will not do so. Instead, we will order that Count III be transferred back to the U.S. District Court for the Southern District of Florida, the proper forum to adjudicate this equitable claim.

When the U.S. District Court for the Southern District of Florida transferred plaintiff's unjust enrichment claim to this court on May 27, 1999, it apparently was under the impression that the Court of Federal Claims had subject matter jurisdiction over implied-in-law contracts. Plaintiff's instant unjust enrichment claim was contained, as count IV, in the original District Court complaint and in substantially similar form when it was transferred to this court. Furthermore, it is important to note that the District Court was inclined to agree with defendant's position that plaintiff's unjust enrichment claim should be dismissed for failure to state a claim and, in fact, initially dismissed the count on those grounds as well as on *res judicata* grounds. These rulings, however, did not stand because the District Court reversed its decision to dismiss and transferred the complaint containing the unjust enrichment claim to this court, by order, on May 27, 1999.

Therefore, this court is not inclined to dismiss Count III with prejudice, but instead will transfer it back to the U.S. District Court for the Southern District of Florida for proper adjudication there. Count III never belonged in this court and, because it was previously transferred from the proper forum to this one, we are compelled to send it back. We do this with the full understanding that Count III is substantially similar to, if not the same as, the unjust enrichment allegation that the District Court initially dismissed for failure to state a claim and on *res judicata* grounds. Furthermore, while defendant has not actually agreed to a transfer back to the U.S. District Court for the Southern District of Florida, it did not, as noted earlier, object to plaintiff's instant transfer request. Accordingly, we see no reason why Count III should not be transferred back to the proper forum, and we, therefore, so order herewith.

## CONCLUSION

For the reasons stated above, this court rules as follows: (1) defendant's motion to dismiss plaintiff's Count I, breach of express and implied-in-fact contract, for lack of subject matter jurisdiction, is hereby GRANTED, and the clerk shall enter judgment accordingly; (2) Count II, breach of express contract, is hereby DISMISSED by the court, *sua sponte,* for lack of subject matter jurisdiction, and the Clerk shall enter judgment accordingly; (3) defendant's motion to dismiss all counts based on the statute of limitations is hereby DENIED, and the Clerk shall enter judgment accordingly; and (4) with regard to Count III, which is based on unjust enrichment, an equitable theory which this court does not have jurisdiction to entertain, the Clerk shall TRANSFER said count, pursuant to 28 U.S.C. § 1631, back to the U.S. District Court for the Southern District of Florida (Miami) for adjudication. No costs. In view of these rulings, defendant's alternative request to file an answer within 60 days of this court's decision on the instant dispositive motions is hereby DENIED as moot.

IT IS SO ORDERED.