ORIGINAL

# In the United States Court of Federal Claims

No. 17-200
(Filed: July 20, 2017)

FILED

JUL 2 0 2017

U.S. COURT OF
FEDERAL CLAIMS

|  |  |
|---|---|
| MARVIN L. STEWART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

*Marvin L. Stewart, pro se,* Long Beach, CA

*Jessica Lee Cole,* U.S. Department of Justice - Civil Division, Washington, DC, for defendant.

## OPINION

**FUTEY,** *Senior Judge*

Plaintiff, Marvin L. Stewart, proceeding *pro se,* is a former service member in the United States Coast Guard. Plaintiff alleges that the Government failed to provide him with the requisite medical examination upon his discharge and subsequently created fraudulent medical documents. Plaintiff filed the complaint on February 9, 2017, seeking back pay and allowance, and ancillary expenses as a result of the alleged wrongful discharge. Also, plaintiff seeks disability retirement and demands back pay and all additional expenses that have been delayed due to administrative error. Before the Court

7017 1450 0000 1346 3844

is defendant's motion to dismiss, filed on June 9, 2017, pursuant to Rule of the Court of Federal Claims ("RCFC") 12(b)(1). Plaintiff failed to submit to the Court his response to the motion to dismiss.

## I. Background

### a. Factual Background

Plaintiff enlisted in the United States Coast Guard and was serving upon the *USCGC Glacier* on July 21, 1971 when there was an attempted firebombing on board. Plaintiff was charged with the attempted firebombing on September 23, 1971 and was kept in custody until December 6, 1971, when a general court-martial found him not guilty. Immediately after the proceeding, he received a general discharge for reason of unsuitability. Additionally, from September 30, 1971 to the date of his discharge, plaintiff was on the Not Fit For Duty status and received medical treatment for a lower back injury incurred while he was in the line of duty.

The parties dispute whether Mr. Stewart received a medical examination for separation prior to his discharge. A document entitled "Report of Medical Examination", which has a physician's and a dentist's signatures, shows that on September 22, 1971, and December 6, 1971, plaintiff received medical examinations and was found qualified for discharge. Def.'s Mot. 2-3. Another form, "Termination of Health Record", dated December 6, 1971 and signed by plaintiff, stated that plaintiff agreed with the findings of a physical examination given to him on that date and that he did not wish to make a rebuttal statement. *Id.*

2

Plaintiff, on the other hand, claims that the "Report of Medical Examination" was falsified since he was still on the journey from the *Glacier* to the base where he was held in custody on September 22, 1971. Compl. 20. Plaintiff also points to discrepancies, omissions, and unclarities in the medical records and alleges that the signature is forged. Compl. 21-24. With regard to the "Termination of Health Record," plaintiff claims that he signed it without being physically examined, in the absence of legal counsel, and under duress from the court-martial decision. Compl. 10. In summary, plaintiff asserts that he never received the medical examination for separation from the Coast Guard during the time he was in custody and until the present day.

### b. Procedural History

As a result of his discharge, plaintiff has brought claims several times before the Board for Correction of Military Record ("BCMR" or "the Board"), the Court of Federal Claims, and several United States District Courts.

In 1976, plaintiff petitioned for correction of his military record before the BCMR. The Board issued a final decision in 1979 and ordered, among other things, to upgrade plaintiff's discharge to honorable by reason of expiration of his enlistment, and update the date of discharge to September 21, 1973. Compl. 6; Def.'s Mot. 3-4. The Board also ordered the Coast Guard to pay plaintiff all payment and allowance owed to him as a result of these corrections. Def.'s Mot. 4.

On August 23, 1995, plaintiff filed a second claim before the BCMR, seeking medical and other ancillary expenses between the previous and the updated date of discharge. Compl. 11; Def.'s Mot. 4. In addition, plaintiff sought permanent disability

3

retirement for the lower back injury he sustained during military service and for post-traumatic stress disorder alleged to have resulted from the Coast Guard's actions. He also sought compensation for "malicious damages". Compl. 11; Def.'s Mot. 4. During the proceeding before the Board, plaintiff submitted supplemental statements and evidence to attack the authenticity of the medical records. Compl. 11-12.

In 1996, the Board refused to reconsider its 1979 decision and denied the new claims for relief, addressing the merits of each claim except the claim for damages, which it did not reach because of its limited jurisdiction. Compl. 13; Def.'s Mot. 4-5.

Plaintiff subsequently requested reconsideration of the BCMR decision, providing the Board with evidence, including abstract of service, travel order, missing dental health record and charts of services rendered, as proof that the medical records were fraudulent. Compl. 13. On December 6, 1996, the request was denied.

In 1997, plaintiff filed a complaint in the United States District Court for the Central District Court of California – Western Division and later transferred the case to the Court of Federal Claims. In the complaint, plaintiff alleges that the Coast Guard wrongfully discharged him without conducting a physical examination and falsified medical documents. Def.'s Mot. 5. Plaintiff also alleged that, as a result of these false documents, he could not obtain veteran's benefits. *Id.* He argued that the 1979 and 1996 BCMR decisions were arbitrary and capricious, and sought an order reinstating him to the Coast Guard or an award of total permanent disability retirement. Def.'s Mot. 5-6.

On June 16, 1998, the Court of Federal Claims dismissed the complaint for lack of jurisdiction, holding that his claim was barred by the statute of limitations, 28 U.S.C. §

4

2501 (1994). *See Stewart v. United States*, No. 98-424C (Fed. Cl. June 16, 1998) ("*Stewart I*"). Specifically, the court determined that "plaintiff's cause of action accrued in 1979 when the Correction Board amended plaintiff's military record." *Id.*; DA 112-13. The court noted that "plaintiff's motion for reconsideration did not toll the statute of limitations" and "cannot form the basis for a new cause of action." *Id.*

The Court of Appeal for the Federal Circuit affirmed the decision on January 7, 1999. *Stewart v. United States*, No. 98-5135, 1999 U.S. App. LEXIS 735, at *6 (Fed. Cir. Jan. 7, 1999) ("*Stewart II*"). The Federal Circuit noted that a claim for unlawful discharge from the military service accrues on the date of discharge and thus, Stewart's cause of action accrued in 1971. *Id.* at *5. The Federal Circuit did not determine whether Mr. Stewart's 1995 claim for disability was also time-barred because the issue was not before the court. *Id.* at *6.

On May 7, 1999, plaintiff filed another complaint in the Court of Federal Claims, alleging wrongful discharge and falsifying medical documents and seeking review of the BCMR 1996 decision. *See Stewart v. United States*, No. 99-281C (May 7, 1999) (order) ("*Stewart III*"). The court noted that the complaint was "virtually identical" with the complaint in *Stewart I* which was dismissed on grounds of untimeliness. *Id.* Thus, the court held that the action was barred by the operation of *res judicata* and because it was untimely, and dismissed the complaint. *Id.*

On December 9, 1999, the Federal Circuit affirmed the court's dismissal on the basis of *res judicata* and did not proceed to address the statute of limitations issue. *Stewart v. United States*, No. 99-5101, 1999 U.S. App. LEXIS 32137, at *7-8 (Fed. Cir.

5

Dec. 9, 1999) ("*Stewart IV*"). Specifically, with regard to the argument that the Court of Federal Claims never reviewed the portion of the Board's 1996 decision that rejected plaintiff's new disability claim, the Federal Circuit held that review of any portion of the BCMR's decision was barred by *res judicata. Id.* at \*6.

Subsequently, plaintiff filed several complaints in different United States District Courts. The complaints were either dismissed on the ground of *res judicata* and untimeliness or, to the extent that new claims were alleged, dismissed on the merits. Def.'s Mot. 9-10.

## II. Discussion

### a. Standard of Review

In deciding a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Plaintiff, as the non-moving party, however, bears the burden of establishing jurisdiction by a preponderance of the evidence. See *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

A *pro se* complaint is to be liberally construed, and plaintiffs' filings "must be held to 'less stringent standards than formal pleadings drafted by lawyers[.]'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nevertheless, a litigant's *pro se* status does not relieve him of these jurisdictional requirements. *Kelley v. Sec'y, United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[L]eniency with respect to mere formalities should be extended to a pro se

6

party . . . [however] a court may not similarly take a liberal view of [the] jurisdictional requirement and set a different rule for pro se litigants only.")

### b. Issue Preclusion

Defendant argues that the issue of whether plaintiff's wrongful discharge claim is time-barred has already been decided in *Stewart I.* Defendant asserts that all four elements of issue preclusion are met and plaintiff is collaterally estopped from alleging that he was wrongfully discharged. Def.'s Mot. 13.

Issue preclusion is generally appropriate if: (1) an issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) the resolution of the issue was essential to a final judgment in the first action; and (4) the party defending against issue preclusion had a full and fair opportunity to litigate the issue in the first action. *DaCosta v. United States,* 393 F. App'x 712, 714 (Fed. Cir. 2010). The general rule is that a jurisdictional issue cannot be revisited unless new, previously unavailable facts can cure the original jurisdictional defects. *Id.,* at 715.

The issue presented to the Court is identical to the issue presented and decided in the previous claims brought by plaintiff in this Court. In *Stewart I,* the court was required to, and did, decide whether the six-year statute of limitations barred plaintiff's claim for wrongful discharge. As a result, the court dismissed the case for lack of jurisdiction. The decision was upheld by the Federal Circuit in *Stewart II.* In *Stewart III,* the court, facing a "virtually identical" complaint, dismissed the case on the ground of *res judicata* and untimeliness. The Federal Circuit, in affirming the decision in *Stewart IV,* held that

7

plaintiff's request for review of his disability claim was also barred by *res judicata* since review of the entire 1996 BCMR decision was before the court and cannot be relitigated. 1999 U.S. App. LEXIS at *7. Therefore, the issue of whether the court has subject matter jurisdiction over plaintiff's wrongful discharge and disability retirement claim was actually litigated and decided.

Plaintiff also confusingly claims for back pay and all ancillary expenses that has been delayed due to administrative error. Compl. 31. The Court views this request as a request for judicial review of the previously denied claims. To this extent, the issue is exactly the same as what was decided in *Stewart I, II, III* and *IV.*

The determination of lack of jurisdiction over plaintiff's claims for wrongful discharge, disability retirement and judicial review led the court to dismiss plaintiff's cases. Plaintiff appealed to the Federal Circuit after each of the Court of Federal Claims decisions. The Federal Circuit reviewed and affirmed the decisions. There is no evidence suggesting that plaintiff was not given a full and fair opportunity to litigate the issue in the four pervious proceedings before this Court and the Federal Circuit.

Finally, the present complaint does not allege new facts or evidence that were not in the previous complaints and thus, could not constitute a new cause of action. Plaintiff fails to allege any facts after the dismissal of *Stewart I* and *III* to cure the jurisdictional defects. See *DaCosta v. United States*, No. 09-558 T, 2010 U.S. Claims LEXIS 11, at *16 (Fed. Cl. Feb. 16, 2010) ("Generally, a court's prior dismissal of an action for lack of subject matter jurisdiction forecloses the re-litigation of the same jurisdictional issue in a subsequent action unless the 'curable defect' exception applies."); *Citizen Elecs. Co. v.*

8

*OSRAM GmbH*, No. 2006-1211, 225 F. App'x 890, 893 (Fed. Cir. 2007) ("[P]laintiff cannot relitigate a jurisdictional dismissal by relying upon those facts that existed at the time of the first dismissal.").

For the foregoing reasons, the action is barred by the issue preclusion doctrine.

### c. Statute of Limitations

Alternatively, the Government moves to dismiss the case on the grounds that plaintiff's action is bared by the statute of limitations. A claim brought pursuant to the Tucker Act must be instituted within six years of the date upon which the cause of action accrues. 28 U.S.C. § 2501 (1994). The six-year time bar requirement should be strictly construed. *Martinez v. United States*, 48 Fed. Cl. 851, 857 (2001). "The start date to begin a statute of limitations calculation for a claim against the United States is 'when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment.'" *Lockwood v. United States*, 90 Fed. Cl. 210, 215 (2008) (citing *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003)).

A claim based on an alleged unlawful discharge from the military service accrues on the date of discharge. *Hurick v. Lehman*, 782 F.2d 984, 986 (Fed. Cir. 1986) (internal quotations omitted). Wrongful discharge cases are brought pursuant to the money-mandating Military Pay Act, 37 U.S.C. § 204, under which resort to a correction board is not mandatory, but permissive. *Lockwood*, 90 Fed. Cl. at 216. Therefore, the accrual date of the statute of limitations in wrongful discharge cases is the date of the discharge. *See id.*; *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir.). "Thus, Stewart's

challenge to his discharge is barred because it accrued when Stewart was discharged in 1971, more than six years before he filed his lawsuit." *Stewart II,* 1999 U.S. App. LEXIS 735, at *5.

With regard to disability retirement claims, the Court of Federal Claims has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance. *Chambers,* 417 F.3d at 1225. Thus, disability retirement claims generally do not start to accrue until the appropriate military board denies the claim in a final decision, or refuses to hear the claim. *Id.* at 1224. The BCMR denied plaintiff's request for disability retirement in 1996, more than six years prior to the filing of the instant case. DA 36-37. Accordingly, plaintiff's claim for disability retirement is barred by the statute of limitations.

## III. Conclusion

For the above-stated reasons, the Court lacks jurisdiction over this matter. Defendant's motion to dismiss is GRANTED. Plaintiff's complaint is hereby dismissed. The Clerk is directed to enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

BOHDAN A. FUTEY
Senior Judge

10