609–10 (1983), to the extent that it appears to hold the contrary.

In sum, where a contract is unambiguous, the government has no duty to notify bidders about a contrary interpretation by one of the bidders, or to verify the other bids.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Federal Claims is affirmed.

## COSTS

No costs.

*AFFIRMED.*

Mercedes **MARTINEZ** (as Trustee of Blue Ridge Development, Ltd., a dissolved Limited Partnership), Plaintiff–Appellant,

v.

**UNITED STATES**, Defendant–Appellee.

No. 01–5092.

United States Court of Appeals, Federal Circuit.

DECIDED: March 1, 2002.

Rehearing Denied April 5, 2002.

---

3. This duty arises only where the contractor's mistake is a "clear cut clerical or arithmetical error, or a misreading of the specifications." *Giesler*, 232 F.3d at 869 (quoting *Liebherr*

*Crane Corp. v. United States*, 810 F.2d 1153, 1157 (Fed.Cir.1987)); *see also Ruggiero*, 420 F.2d at 713.

Thomas F. Pepe, Pepe & Nemire, of Coral Gables, Florida, for plaintiff-appellant.

John C. Einstman, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were Stuart E. Schffer, Acting Assistant Attorney General; David M. Cohen, Director; and Mark A. Melnick, Assistant Director.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LOURIE, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This appeal challenges the Court of Federal Claims' dismissal of counts of a complaint seeking damages for the alleged breach by the Department of Housing and Urban Development ("HUD") of a contract

provision authorizing HUD to approve disbursement to the appellant of certain funds held in trust. The Court of Federal Claims took that action because it concluded there was no privity of contract between HUD and the appellant. We affirm.

I

A. The background facts, as found by the Court of Federal Claims and as further shown by the record, are undisputed.

Blue Ridge Development, Ltd. ("Blue Ridge") was a Florida limited partnership that owned a tract of land in Florida. The appellant Martinez was formerly a general partner of Blue Ridge and is a trustee of that entity, which has been dissolved.

In order to develop the property by constructing moderate income apartments on it, Blue Ridge obtained a construction loan of $17,800,000 from Professional Mortgage Co. ("Professional Mortgage" or "Lender") and hired Cipicorp Construction ("Cipicorp" or "Contractor") as the general contractor. HUD guaranteed the loan and mortgage in a "commitment" that specified various terms and conditions, including compliance with HUD rent schedules.

Pursuant to HUD regulations, 24 C.F.R. § 221.542, in 1987 Cipicorp executed a "Completion Assurance Agreement" with both Blue Ridge and Professional Mortgage. Although the agreement was on a HUD form, HUD was not a party to it and did not sign it. The three parties to and signatories of the agreement were Cipicorp, Blue Ridge and Professional Mortgage.

As the Completion Assurance Agreement required, the Contractor deposited with the Lender an unconditional irrevocable letter of credit for $2,914,316, which constituted a "Completion Assurance Fund,"

to secure or indemnify the Owner or Lender ... for any expenses, loss, or damage suffered or sustained as the result of any default by the Contractor in the performance of the Construction Contract.... [S]aid Fund shall at all times be under the control of the lender.

The Completion Assurance Agreement required the Lender to

Maintain such Fund as a separate trust account to be disbursed in the following order:

(a) To the Contractor ... with prior written approval of the Commissioner [of HUD]....

(b) To the Owner such portion of the Fund as deemed necessary by the Commissioner to recover any overpayment to the Contractor.

(c) To the Contractor ... the balance of such fund so deposited....

(d) To the Lender the entire Fund or balance remaining therein in the event of a default by the Contractor... to be used by the Lender to indemnify it and the Owner ... for any loss, damage or expense whatsoever which they may suffer by reason of the Contractor's failure to properly perform said Construction Contract. In any event, any and all disbursements from said Fund shall be made only upon the prior written approval of the Commissioner, or his/her authorized agent.

Finally, the Completion Assurance Agreement provided:

In the event of a default by the Contractor in any of its obligations under the Construction Contract, the entire Fund or balance remaining therein may, at the option of the Lender and the Commissioner, be paid to the Commissioner together with an assignment of all rights hereunder granted to the Lender and the Owner.

HUD and Blue Ridge entered into a Regulatory Agreement, which required

Blue Ridge "to only rent the finished property to certain income tenants in exchange for HUD's insuring the loan."

Following various asserted defaults in the Contractor's performance of the contract, in January 1989 Blue Ridge requested HUD to release completion assurance funds of approximately $650,000 "for the repair of construction defects and to reimburse Blue Ridge for the overpayments made to the Contractor." Three months later HUD "responded ... that it would not release any monies at that time but it would consider the request and make a decision at a later date."

Also in January 1989 Blue Ridge missed a payment on the construction loan. The Lender requested HUD to disburse funds from the trust and accept an assignment of the mortgage. The Lender made that assignment in January 1989, in a document in which it "does hereby sell, transfer, assign, and set over unto [HUD] ... all right, title, and interest in and to the following documents: (1) Completion Letter of Credit No. 8–6145, issued by Professional Bancorp Mortgage Co., dated June 10, 1987, in the amount of Two Million Nine Hundred Fourteen Thousand Three Hundred Sixteen ($2,914,316.00) dollars ...." In September 1990 HUD purchased the mortgaged property at a foreclosure sale.

B. Martinez then instituted the precursor to the present suit in the United States District Court for the Southern District of Florida. After some skirmishing in that court (in which the court dismissed the complaint, and Martinez filed a second complaint that the district court then transferred to the Court of Federal Claims), Martinez filed the present complaint in the Court of Federal Claims. The amended complaint contained three counts—Counts I and II for "Breach of Contract" and Count III for "Unjust Enrichment." Count I alleged in paragraph 10:

HUD had contractual control over all expenditures from the completion assurance fund at the time that Blue Ridge made its demand for disbursement and HUD owed Blue Ridge an implied contractual duty of good faith and fair dealing. HUD violated that duty and violated the Completion Assurance Agreement when it failed to authorize the release of funds from the completion assurance fund to reimburse Blue Ridge for overpayments made to Cipicorp and when HUD failed to authorize release of the funds to repair defects in the construction.

Count II alleged that, as the result of the Lender's assignment to HUD of its interest in the Completion Assurance Agreement and the Fund,

HUD has stepped into the shoes of the Lender as the trustee of the Completion Assurance Fund. HUD currently holds these funds in a miscellaneous income trust account. HUD, as trustee, has a contractual duty to comply with the Completion Assurance Agreement provisions and those provisions require that as between the Lender and the Owner the trustee is required to first repay the Owner to recover any overpayments made to the Contractor, and thereafter to indemnify itself and Blue Ridge for any loss, damage or expense caused by the Contractor's breach of its construction contract.

14. HUD breached its obligations by failing to pay Blue Ridge for the overpayments made to the Contractor.

Finally, the unjust enrichment count alleged that "HUD has been unjustly enriched at the expense of Blue Ridge because, among other things, HUD has been paid the entire $2,914,316.00 Completion Assurance Fund, a portion of which is owed to Blue Ridge for, among other

things, overpayment made to the Contractor."

On the government's motion to dismiss Counts I and III, the court dismissed Count I for lack of jurisdiction and sua sponte dismissed Count II on the same ground. It retransferred Count III to the Florida district court (pursuant to 28 U.S.C. § 1631), because the claim for unjust enrichment was based upon a contract implied in law, over which only the district court, and not the Court of Federal Claims, had jurisdiction. Since neither party challenges that retransfer, we shall not discuss it further.

The Court of Federal Claims first rejected the government's contention that the statute of limitations barred the suit. It then held that none of the documents upon which Martinez relied, either individually or collectively, created privity of contract between Blue Ridge and HUD. The court pointed out that although three of the documents were "on HUD approved forms, they do not contractually bind HUD regarding the CAA [Completion Assurance Agreement] funds for a variety of reasons. First, the CAA was not signed by HUD ... but only by the Contractor, Lender, and plaintiff." *Martinez v. United States,* 48 Fed.Cl. 851, 860 (2001). Although HUD signed the Regulatory Agreement, it "does not bind HUD in contract with the plaintiff regarding the CAA funds. In fact, the Regulatory Agreement is a document that established plaintiff's obligations to rent the finished property to certain income tenants and was designed purely for HUD's benefit." *Id.* at 861.

The court also held that the one document HUD did sign, the Commitment for Insurance of Advances (the "Commitment"), "also does not establish privity between the parties regarding the CAA funds." *Id.* The Commitment refers to the other two documents, and its stated purpose

was to bind HUD with regard to payment of the mortgage in the event of Blue Ridge's default, contingent on plaintiff executing the Regulatory Agreement and the CAA funds. Thus, under this agreement, HUD was insuring repayment of the Lender's loan in exchange for plaintiff's promise to follow HUD regulations in renting the property to certain income tenants and assuring HUD and the Lender of its completion. Plaintiff's only promised benefit from HUD, under this signed agreement, was simply a lower mortgage interest rate from the Lender because of HUD's guarantee to insure the loan. *Id.*

The court also rejected Martinez's contention that there was an implied-in-fact contract regarding the Completion Assurance Agreement funds, that "HUD owed [Blue Ridge] an implied contractual duty of fair dealing and care because of HUD's intimate involvement with the CAA contract and because HUD acted as an arbiter under said agreement." *Id.* The court "[c]onclude[d] that there was no implied contractual relationship between the parties concerning the CAA funds." *Id.*

With respect to Count II, which the court described as "substantially the same as [the] breach of contract claim under Count I, except that Count II centers on the parties' alleged contractual relationship after the Lender's June 1, 1989 assignment of the mortgage and CAA funds to HUD," *id.* at 863, the court ruled that

because there was an assignment of *all* of plaintiff's rights under the fund, plaintiff had no legal or contractual right to any of those monies.... Therefore, the June 1, 1989 assignment document does not create privity between the parties because, after its execution, plaintiff had no more legal, express or implied, rights to the CAA funds. In other words, the

assignment does not create a contract between plaintiff and HUD any more than the CAA itself or the alleged implied duty of care do, as discussed in the prior section. Consequently, the court holds that, under Count II, as well, plaintiff has failed to establish privity of contract and thus we must dismiss Count II, *sua sponte*, for lack of subject matter jurisdiction. *Id.* at 864.

## II

█ In *Cienega Gardens v. United States*, 194 F.3d 1231 (Fed.Cir.1998), *cert. denied sub nom. Sherman Park Apartments v. United States*, 528 U.S. 820, 120 S.Ct. 62, 145 L.Ed.2d 54 (1999), this court rejected a similar attempt to impose liability upon the United States based upon HUD's alleged breach of a contract (relating to rent-controlled housing and HUD-insured housing mortgages) to which HUD was not a party. Although there are factual differences between that case and the present one, the governing legal principles are the same. *Cienega Gardens* is dispositive of this case and requires the same conclusion here as there: HUD is not liable for breach of contract because there is no privity of contract between it and the plaintiff.

A. *Cienega Gardens* involved low income housing projects that had been financed through HUD-insured mortgages securing loans from private lenders. The property owners gave the lenders deed of trust notes payable to them. Both the deed of trust and the notes were on printed forms HUD had approved, and HUD endorsed the notes as part of its mortgage insurance. In return for such endorsement, the owner and HUD entered into a "regulatory agreement" which limited the income level of the tenants and the rents, and which was to continue as long as the loan was outstanding.

The term of the notes generally was forty years. Although the regulatory agreement did not refer to prepayment of the loan, "a rider to the deed of trust note permitted the owner to prepay the loan in full, without HUD approval, after twenty years.... By prepaying the outstanding loan, an owner could terminate HUD's affordability restrictions on the property. The owner then could convert the property into a conventional rental property and charge market rental rates, thereby obtaining a greater return on the investment." *Cienega Gardens*, 194 F.3d at 1235.

"[C]oncerned that a large number of owners might shortly exercise their prepayment options, thereby reducing the supply of low-income rental housing," *id.*, Congress enacted legislation providing that "owners could not prepay their mortgage loans after twenty years without HUD approval, as had been permitted under the riders to deed of trust notes." *Id.*

The owners brought suit in the Court of Federal Claims, alleging that the legislation had breached their contractual right to prepay their loans after twenty years. That court granted summary judgment for the owners on the claim, but this court reversed. We stated:

> The question before us is whether the transaction framed by the commitment, the deed of trust note, the deed of trust, the loan agreement, each of which was in a form approved by HUD, gave rise to privity of contract between HUD and the Owner insofar as the right to prepay the mortgage loan was concerned. We conclude that it did not.

*Id.* at 1241.

The court "start[ed] from the premise that the United States, i.e., HUD, was a named party to only one contract in connection with each of the relevant projects, that contract being the regulatory agree-

ment. Moreover, in that regard, as just seen, it was the Owner, not HUD, that assumed obligations under the regulatory agreement. The regulatory agreement did not incorporate any other agreement, including the deed of trust note or Rider A to the deed of trust note. Neither did the regulatory agreement mention prepayment of the mortgage loan or incorporate any agreement or provision addressing prepayment." *Id.* at 1241–42. The court stated:

> While the deed of trust note (and the incorporated Rider A) and the regulatory agreement were part of the same transaction, each document stands alone and is unambiguous on its face. The documents evidence separate agreements between distinct parties. The Court of Federal Claims erred in importing requirements from the deed of trust note and the accompanying rider into the regulatory agreement. The regulatory agreement, which was a document under which the Owner assumed obligations, did not address prepayment, and the court erroneously read the prepayment terms contained in the deed of trust note and Rider A, between the private lending institutions and the relevant Owner, into the regulatory agreement between HUD and the Owner. The critical point is that the contract documents simply do not show privity of contract between the Owners and HUD with respect to a right to prepay the mortgage loans after twenty years without HUD approval.

*Id.* at 1243.

The court also rejected the owners' argument that "HUD's ultimate involvement with the projects at issue created privity of contract with respect to the prepayment terms in the riders attached to the deed of trust notes." *Id.* at 1244. The court ruled that:

> In order for the government to be liable for breach of contract, there must

be privity of contract and that the degree of HUD involvement with a project does not create privity so as to allow suit against the government. . . .

> The Owners did have contractual relationships with HUD via the various regulatory agreements. As seen above, however, the contract evidenced by each of the regulatory agreements was limited in scope to obligations on the part of the Owner that were in consideration for HUD having endorsed the deed of trust note which evidenced the loan to the Owner from its lending institution. Although there was a contract—the regulatory agreement—between each of the Owners and HUD, the Owners' claims are based on the prepayment terms in the deed of trust notes and the attached riders. HUD and the Owners had no contractual relationship with respect to prepayment rights, and HUD's involvement in the contracts between the private lending institutions and the Owners could not create such a contractual relationship.

*Id.* at 1245.

The court concluded that "[b]ecause there was no privity of contract between HUD and the Owners with respect to prepayment of the deed of trust notes, HUD could not be liable to the Owners for beach [sic] of contract by reason of the enactment of" the legislation barring prepayment of the notes after twenty years without HUD approval. *Id.* at 1246.

The foregoing analysis and reasoning in *Cienega Gardens* is equally applicable to the present case. Here, as there, HUD was not a party to the contract whose alleged breach is the subject of the suit. Here the allegation is that HUD breached its obligation to authorize disbursal to Blue Ridge of portions of the Completion Assurance Fund. It was the Completion Assurance Agreement that provided for the fund

and specified the conditions for its operation. HUD was not a party to that agreement, and there was no privity of contract between HUD and Blue Ridge under that agreement.

The situation here is thus analytically the same as in *Cienega Gardens*, in which the owners' right to prepay the notes after twenty years was created by the rider to the notes, to which HUD was not a party. This court's explanation in *Cienega Gardens* is equally applicable to the present case, with language changes to reflect the present facts:

> The critical point is that the contract documents simply do not show privity of contract between the Owners and HUD with respect to a right to [have HUD authorize disbursal of the Completion Assurance Fund].

*Cienega Gardens*, 194 F.3d at 1243.

In both cases, the documents that HUD signed were not the source of HUD's alleged contractual obligation that it assertedly breached. In the present case, HUD signed the regulatory agreement and the insurance commitment. HUD's disbursement obligation, however, was contained in the Completion Assurance Agreement, to which HUD was not a party. Similarly, in *Cienega Gardens* the owners' right to prepay the loans after twenty years was contained in the rider to the notes, which HUD had not signed.

Finally, in both cases the contracts were on forms approved or prescribed by HUD, HUD had a substantial connection with the project, and HUD signed the Regulatory Agreement with the parties undertaking the project. As the court held in *Cienega Gardens*, however, that level of participation was not enough to permit a breach of contract claim against the government. "[T]he degree of HUD involvement with a project does not create privity so as to allow suit against the government." *Cienega Gardens*, 194 F.3d at 1245. *See*

*also Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed.Cir.1994) ("A grant of benefits and subsequent oversight by HUD is insufficient to establish a contractual obligation between [the developer] and the government.").

B. Martinez's breach of contract claim in Count II stands on no firmer footing. It is subject to the same basic infirmity as the claim we have just rejected: there is no privity of contract between HUD and Blue Ridge.

■ The Count II claim rests upon the Lender's January 1989 assignment to HUD of all of its interest in the fund, after Blue Ridge missed a payment on the construction loan. The Completion Assurance Agreement provided that if the Contractor defaulted, the remainder of the fund could be paid to the Commissioner "together with an assignment of all rights hereunder granted to the lender and the owner." Presumably the Court of Federal Claims relied upon this provision in concluding that the assignment covered "*all*" of plaintiff's [i.e., Blue Ridge's] rights under the fund." *Martinez v. United States*, 48 Fed. Cl. 851, 864 (2001). Here, however, the default that precipitated the assignment may have been that of Blue Ridge rather than that of the Contractor. In any event, the assignment does not state that it covered Blue Ridge's interest in the fund (in addition to the Lender's). Any contractual relationship that the assignment may have created was between HUD and the Lender, and any obligations it may have created involved only those two parties. Blue Ridge was not a party to that assignment, which did not create privity of contract between Blue Ridge and HUD.

C. The district court characterized "HUD's refusal to approve the release of monies [to Blue Ridge], considering the ongoing situation regarding the construc-

▉

tion," as "inequitable." *Martinez*, 48 Fed. Cl. at 863. We agree.

The Completion Assurance Agreement, which provided for the Completion Assurance Fund, was a HUD form. The stated purpose of the fund was "to secure or indemnify the Owner or Lender, as the case may be, for any expenses, loss, or damage suffered or sustained as the result of any default by the Contractor in the performance of the Construction Contract." When, thirteen years ago, Blue Ridge (the owner) requested HUD to authorize disbursement to it of part of the fund to compensate it for expenses it had incurred because of the Contractor's default, HUD declined to "release any monies at that time" but stated that "it would consider the request and make a decision at a later date." The record does not indicate what action, if any, HUD subsequently took or the reasons therefore.

Although the fund was created at HUD's direction in order to protect the Lender and Blue Ridge, the only apparent beneficiary of the fund has been HUD itself, which simply appears to have kept it without explanation. Blue Ridge, although one of the two beneficiaries of the fund, has received no benefit from it. Our citizens deserve better and fairer treatment when they deal with their government.

▉ Perhaps the situation could be rectified under the unjust enrichment claim in Count III, which the Court of Federal Claims retransferred to the Florida district court. As the Court of Federal Claims recognized, however, "Count III is substantially similar to, if not the same as, the unjust enrichment allegation that the District Court initially dismissed for failure to state a claim and on *res judicata* grounds." *Martinez*, 48 Fed. Cl. at 865. In any event, HUD's unfair treatment of Blue Ridge would not justify ignoring the lack of privity between Blue Ridge and

HUD with respect to the claims Martinez asserts for Blue Ridge.

## CONCLUSION

The part of the judgment of the Court of Federal Claims that dismissed Counts I and II of the complaint is

*AFFIRMED.*