**DIVERSIFIED MAINTENANCE SYSTEMS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 11–504 C.**

United States Court of Federal Claims.

Feb. 21, 2012.

---

Timothy Miguel Willardson, Salt Lake City, UT, for plaintiff.

Daniel B. Volk, United States Department of Justice, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Washington, DC, for defendant.

## OPINION

BUSH, Judge.

Now pending before the court is defendant's motion to dismiss, which has been fully briefed and is ripe for a decision by the court. Because the court does not possess subject matter jurisdiction over the claims set forth in the complaint, defendant's motion to dismiss the complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) is granted.

## BACKGROUND[1]

In this case, plaintiff seeks damages stemming from the government's alleged breach of a contract with plaintiff. Defendant has moved to dismiss the complaint on the ground that plaintiff did not submit a claim to the contracting officer before commencing its suit in this court, as required under the Contract Disputes Act of 1978, 41 U.S.C.A. §§ 7101–7109 (West Supp. 2011) (CDA). For that reason, defendant asserts that the claim must be dismissed pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction.

### I. Factual History

The United States, through the Department of the Navy (Navy), awarded Contract No. N69450–09–D–0756 to plaintiff Diversified Maintenance Systems, Inc. (DMS) on December 18, 2008. The contract, according to the complaint, was initially solicited and awarded to DMS as a job order contract to provide services in support of Naval Support Activity Panama City.

In January 2009, the Navy informed DMS that the subject contract had been solicited

---

1. The facts recounted here are taken from the parties' submissions and are undisputed unless otherwise noted. The court makes no findings of fact in this opinion.

and awarded with the wrong specifications. For that reason, the Navy requested that DMS agree to substitute new specifications for those that had been set forth in the solicitation. DMS agreed to accept the new specifications without any adjustment in contract price and also entered into several other agreements with the Navy regarding the administration and performance of the contract.

Following its acceptance of the new specifications, DMS commenced the performance of several task orders under the contract. DMS asserts that the Navy has withheld payments for those task orders as liquidated damages based on delays that were caused by the government's mismanagement of the job order contract. DMS also alleges that the Navy prepared a derogatory evaluation of DMS and submitted that evaluation into the Construction Contractor Appraisal Support System (CCASS). The submission of the CCASS evaluation, according to DMS, violated CCASS regulations and was contrary to the Navy's prior assurances to DMS that it would not finalize the evaluation before meeting with DMS to discuss its contents. In addition, DMS alleges that the Navy refused to accept invoices from DMS unless they contained a waiver of related claims.

On January 7, 2010, DMS sent a letter to the contracting officer responsible for the subject contract. *See* Def.'s Mot. Ex. A. In that letter, DMS demanded that the Navy release all payments withheld as liquidated damages, subject to certain specified exceptions. Plaintiff also demanded that the Navy retract its CCASS evaluation of DMS. Finally, DMS demanded that the Navy immediately cease its "harassment and vexation of DMS and DMS's employees...." *Id.* at 1. The Navy did not respond to the January 2010 letter. Def.'s Mot. at 6.

## II. Procedural History

DMS filed its complaint in this case on August 8, 2011. In its complaint, DMS asserts that the Navy has breached the express terms of its contract with DMS. Plaintiff also alleges that the Navy has breached its implied duties of good faith and cooperation, and has effected a cardinal change to the requirements of the job order contract. DMS requests damages in the amount of $614,142.40, which represents the difference between the amount billed by DMS for work performed under the contract and the amount actually paid to DMS by the Navy. DMS also requests a preliminary injunction ordering the immediate payment of all invoices submitted by DMS to the Navy, as well as a preliminary injunction invalidating all claim waivers on delivery orders.[2] While the complaint sets forth claims for breach of contract, plaintiff does not cite the CDA as the jurisdictional basis of those claims; rather, DMS states that this "court has jurisdiction pursuant to 28 U.S.C. § 1491(b) [(2006)]." Compl. ¶ 2.

On October 7, 2011, defendant filed a motion to dismiss the complaint in its entirety. In its motion, defendant argues that this court does not possess subject matter jurisdiction over any of the claims set forth in the complaint because DMS did not submit a valid claim to the contracting officer before commencing its suit in this court. Defendant notes that plaintiff has failed to allege that it has satisfied that jurisdictional prerequisite, and argues that the letter sent by DMS to the contracting officer in January 2010 was not a proper claim because it did not request a sum certain and did not contain the certification required for claims that exceed $100,000. For those reasons, defendant argues that the claims set forth in DMS's complaint must be dismissed pursuant to RCFC 12(b)(1).

DMS filed its response to defendant's motion on November 7, 2011. In its response, DMS does not dispute defendant's assertion that plaintiff did not submit a certified claim to the contracting officer before commencing this suit. Rather, DMS argues that this court may exercise jurisdiction over the claims set forth in the complaint under 28 U.S.C. § 1491(b). DMS rejects the govern-

---

**2.** DMS did not file a motion for a preliminary injunction, nor did it address any of the four required factors for such relief. *See Titan Tire* *Corp. v. Case New Holland, Inc.,* 566 F.3d 1372, 1375–76 (Fed.Cir.2009) (discussing the four requirements for a preliminary injunction).

ment's assertion that the subject matter jurisdiction conferred upon the court by section 1491(b) is limited to bid protests. Because the governmental actions challenged by plaintiff in its complaint are "in connection with a procurement," DMS argues that its claims fall squarely within the ambit of section 1491(b), which does not require the submission of a claim to the contracting officer as a jurisdictional prerequisite to a suit in this court. DMS further states that the remedies requested in the complaint are not primarily or predominantly monetary, but injunctive in nature.

Defendant replied to DMS's response on November 25, 2011. In its reply, the government argues that the claims set forth in DMS's complaint are precisely the type of claims covered by the CDA, which is the exclusive legal mechanism for the resolution of the type of breach-of-contract claims now before the court. When a claim is covered by the terms of the CDA, defendant argues, that claim must be brought under the CDA and not under section 1491(b), which does not apply to claims by a contract awardee related to a dispute over post-award contract administration. Defendant also contends that while a cardinal change is a material breach that releases the non-breaching party from its obligations under the contract, it cannot release that party from the statutory requirements of the CDA.

Oral argument was neither requested by the parties nor deemed necessary by the court.

## DISCUSSION

### I. Standard of Review

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The

relevant issue in a motion to dismiss under RCFC 12(b)(1) " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Patton v. United States*, 64 Fed.Cl. 768, 773 (2005) (quoting *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683). The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). The court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case. *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461–62 (Fed.Cir.1998); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991)), *aff'd in relevant part*, 281 F.3d 1376 (Fed. Cir.2002). "Indeed, the court may, and often must, find facts on its own." *Id.* If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

### II. Analysis

In its motion to dismiss, the government asserts that this suit must be dismissed because it was not preceded by the submission of a valid claim to the contracting officer as required under the CDA. Plaintiff does not allege in its complaint that it presented a valid CDA claim to the contracting officer, nor does it dispute the government's assertion that it has failed to meet that jurisdictional requirement. Instead, DMS asserts that this court may exercise jurisdiction over this case pursuant to 28 U.S.C. § 1491(b), which does not require the submission of a claim to the contracting officer before commencing a suit in this court. For the reasons discussed below, the court concludes that the CDA provides the only potential jurisdictional basis for the claims raised in the complaint. Furthermore, the court holds that it cannot exercise jurisdiction under the CDA in this case because DMS did not submit a proper claim to the contracting officer before commencing this suit. For those reasons, DMS's complaint must be dismissed.

## A. The Claims Raised by DMS Must Be Pursued under the Contract Disputes Act

This court has subject matter jurisdiction over claims for money damages against the federal government based upon "any express or implied contract with the United States...." 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act further provides that

[t]he Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2) (2006). In short, this court possesses subject matter jurisdiction to hear claims for monetary and non-monetary relief under the CDA.

The provisions of the CDA apply to any express or implied-in-fact contract made by an executive agency for

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

(3) the procurement of construction, alteration, repair, or maintenance of real property; or

(4) the disposal of personal property.

41 U.S.C.A. § 7102(a). DMS does not dispute that the job order contract at issue in this case falls within the reach of section 7102. Instead, DMS argues that its claims may be raised under 28 U.S.C. § 1491(b), which provides in relevant part:

[T]he Unite[d] States Court of Federal Claims ... shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connec-tion with a procurement or a proposed procurement....

[T]he United States Court of Federal Claims ... shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1). DMS does not assert that it is challenging a solicitation or the award or proposed award of a contract. Rather, DMS argues that the claims set forth in its complaint are based upon alleged violations of statutes or regulations "in connection with a procurement."

DMS further argues that its claims may be addressed under section 1491(b) because it has alleged that the government has effected a cardinal change to the contract and that "[t]he relief sought in this case is not primarily or predominantly monetary, it is injunctive." Pl.'s Resp. at 3. DMS cites two cases that it contends support that argument, and asserts that suits alleging a cardinal change may be raised under section 1491(b) because such a change constitutes a material breach that frees the contractor of its obligations under the disputes clause of the contract. Plaintiff's contentions, however, fail on all fronts.

At the outset, the court notes that DMS does not dispute the fact that its job order contract is a contract which falls within the category of either an express or implied-in-fact contract as set forth in section 7102. The contract, as described by plaintiff, appears to be one for construction services, *see* Compl. ¶ 9, and thus, would necessarily fall within the ambit of and be covered by the terms of the CDA. Accordingly, to the extent that this court would have jurisdiction to hear any of plaintiff's claims alleging a breach of that contract—or any claim related to the administration or management of that contract—such a claim must be brought under the CDA. *See Dalton v. Sherwood Van Lines, Inc.,* 50 F.3d 1014, 1017 (Fed.Cir.1995) ("When the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution; the Contract Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option.") (citations omitted); *Gonzalez–*

*McCaulley Inv. Grp. v. United States*, 93 Fed.Cl. 710, 716 (2010) ("Both this court and the Federal Circuit have made clear that claims relating to breach, termination, and overall contract management must be brought under the CDA.") (citations omitted); *Gov't Technical Servs. LLC v. United States*, 90 Fed.Cl. 522, 527 (2009) ("The Federal Circuit has made it crystal clear that the CDA is the 'exclusive mechanism' for the resolution of disputes arising, as here, in contract management.") (citing *Dalton*, 50 F.3d at 1017).

DMS's argument that this court may exercise subject matter jurisdiction over its claims under section 1491(b) fails for at least two reasons. First, as noted above, both this court and the Federal Circuit have held that claims related to the ongoing administration and management of a government contract, including claims for breach of contract or termination, must be pursued under the CDA, not under the court's bid protest jurisdiction. *See Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052, 1055 (Fed.Cir.1993) ("The CDA exclusively governs Government contracts and Government contract disputes.") (citation omitted); *Frazier v. United States*, 79 Fed.Cl. 148, 160 (2007) ("[P]ure contract claims are not appropriate in a bid protest, even if clothed in the guise of a protest of an alleged statutory violation occurring in relation to a procurement."), *aff'd*, 301 Fed.Appx. 974 (Fed.Cir.2008); *Ravens Grp., Inc. v. United States*, 78 Fed.Cl. 390, 398 (2007) (noting that section 1491(b) provides no jurisdiction for claims of wrongful termination or breach).

 Having discussed the established tenet that issues of contract administration related to an existing contract must be pursued under the CDA, we turn to an accompanying corollary—contract administration issues do not fall within the express language of section 1491(b) because they do not relate to an objection by an "interested party" to a solicitation, award, or proposed award of a contract, or to any alleged violation of a statute or regulation in connection with a procurement. In this case, DMS cannot demonstrate that it is an "interested party" as that term is used in section 1491(b), and thus cannot establish that it has standing to proceed under that provision. The plaintiff in any bid protest under section 1491(b) must establish that it is an interested party with a direct economic interest in the procurement. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed.Cir.2003) (citing *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed.Cir. 2001) (*AFGE*)). The Federal Circuit has limited standing under section 1491(b) to those plaintiffs who are "'actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by the failure to award the contract.'" *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed.Cir.2009) (quoting *AFGE*, 258 F.3d at 1302).

Here, DMS is not an actual or prospective bidder or offeror; on the contrary, plaintiff was awarded the subject contract before the occurrence of any of the events that form the basis of its claims in this suit. This court has explained that a contractor challenging the administration or management of its contract is not a disappointed bidder for purposes of this court's bid protest jurisdiction:

> The court does not see how a plaintiff asserting claims pertaining to a contract it has made with the government could be a "disappointed bidder" for bid protest purposes. Rather, such a plaintiff is a contractor asserting a claim "relating to a contract" and is subject to the [CDA] jurisdiction of this court, as set forth in 41 U.S.C. § 609. Because plaintiffs . . . received contract awards under the solicitation complained of, they are not disappointed bidders and do not have standing to assert this protest.

*ABF Freight Sys., Inc. v. United States*, 55 Fed.Cl. 392, 397 (2003) (citations omitted); *see also Outdoor Venture Corp. v. United States*, 100 Fed.Cl. 146, 152 (2011) ("Once a bidder has received a contract, it is no longer an actual or prospective bidder or offeror with regard to the particular procurement. Instead, the bidder has become an awardee, who is not an interested party for purposes of 28 U.S.C. § 1491(b)(1) and therefore lacks standing to bring a bid protest to protect its award.") (citations omitted); *cf. Davis/*

*HRGM Joint Venture v. United States*, 50 Fed.Cl. 539, 545 (2001) ("Here, Plaintiff clearly challenges the termination of its contract. Plaintiff's characterization of the contracting officer's decision to terminate its contract as violating regulations or irrational and arbitrary does not bring the claim within this Court's bid protest jurisdiction.").

In some instances, this court has allowed awardees to challenge, under section 1491(b), governmental corrective action that involved the termination or suspension of a contract and the subsequent re-competition of the requirements of that contract. *See, e.g., Sys. Application & Techs., Inc. v. United States*, 100 Fed.Cl. 687, 703–06 (2011); *Jacobs Tech. Inc. v. United States*, 100 Fed.Cl. 173, 174–76 (2011); *Sheridan Corp. v. United States*, 95 Fed.Cl. 141, 147–51 (2010); *Turner Constr. Co. v. United States*, 94 Fed.Cl. 561, 571–72 (2010); *Ceres Gulf, Inc. v. United States*, 94 Fed.Cl. 303, 314–16 (2010); *Centech Grp., Inc. v. United States*, 78 Fed.Cl. 496, 503–04 (2007). In each of those cases, however, the court concluded that bid protest jurisdiction was proper because the challenged corrective action essentially returned the procurement to a pre-award status. *See e.g., Sheridan*, 95 Fed.Cl. at 148–49 (explaining that the plaintiff in that case had been returned to its pre-award status when the government suspended its contract and re-competed the requirements of that contract). That is not the case here. DMS has not alleged that defendant has terminated or suspended its contract, or that it has attempted to re-compete the requirements of that contract.

Finally, DMS cites two separate cases for the proposition that plaintiffs who pursue a material breach claim based on a cardinal change to their contracts are permitted to pursue such claims under section 1491(b). DMS misreads both cases. In one of those cases, the plaintiff had argued that the government unlawfully expanded the scope of *its competitor's contract* to encompass requirements that should have instead been procured under a new, competitive solicitation.

*CW Gov't Travel, Inc. v. United States*, 61 Fed.Cl. 559, 563–65 (2004) (*CWGT*). In contrast to this case, the court explained that "[t]he question ... is not whether the Government modifications amounted to a breach of contract. Rather, the inquiry focuses on whether the Government modifications changed the contract so profoundly as to circumvent the statutory requirement of competition." *Id.* at 574. In other words, the allegation of a cardinal change in that case was not part of a material breach claim, but rather a claim that the government had violated the Competition in Contracting Act, 41 U.S.C. § 253(a) (2006) (CICA).[3] In addition to its claims under section 1491(b), moreover, the plaintiff in *CWGT* also raised a breach claim, which the court held was subject to the requirements of the CDA, including the requirement that a contractor submit a valid claim to the contracting officer before commencing suit in this court. *CWGT*, 61 Fed.Cl. at 579–80.

Nor does the second case cited by DMS hold that a plaintiff may pursue a material breach claim under section 1491(b) based on a cardinal change. To the contrary, the court held in that case that the submission of a valid claim to the contracting officer and a final decision by the contracting officer on that claim were both jurisdictional prerequisites to a subsequent suit under the CDA. *Kentucky Bridge & Dam, Inc. v. United States*, 42 Fed.Cl. 501, 515–19 (1998). Because the plaintiff in that case successfully demonstrated that it had submitted a valid claim to the contracting officer before commencing its suit, this court denied the government's motion to dismiss. *Id.* at 519.

In short, DMS may not pursue its contract claims under section 1491(b). The claims set forth in the complaint fall within the reach of the CDA and may therefore be pursued only under the CDA. Because DMS must pursue its claims under the CDA, it must meet the jurisdictional requirements of that statute, including the requirement to submit a certi-

---

3. The Federal Circuit has held that claims alleging a violation of CICA fall within the scope of section 1491(b). *See RAMCOR Servs. Grp. v. United States,* 185 F.3d 1286, 1288–90 (Fed.Cir. 1999) (holding that a challenge to an agency's decision to override an automatic stay triggered by a bid protest to the Government Accountability Office pursuant to CICA was within this court's subject matter jurisdiction under section 1491(b)(1)).

fied claim to the contracting officer before commencing suit in this court.

### B. DMS Has Failed to Meet the Jurisdictional Requirements of the Contract Disputes Act

 Before filing suit in this court under the CDA, a plaintiff must first submit a written claim to the contracting officer for a final decision. 41 U.S.C.A. § 7103(a). Although the CDA does not define the term "claim," the Federal Acquisition Regulation (FAR) describes a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101 (2011). The Federal Circuit has further explained that a valid claim must contain both: "(1) adequate notice of the basis and amount of a claim and (2) a request for a final decision." *M. Maropakis Carpentry, Inc. v. United States,* 609 F.3d 1323, 1328 (Fed.Cir. 2010). When a claim seeks more than $100,000, it must be certified in accordance with section 7103, 41 U.S.C.A. § 7103(b)(1), but a defective certification may be corrected during the pendency of a suit in this court, *id.* § 7103(b)(3).

The submission of a written claim to the contracting officer and a final decision on that claim are both jurisdictional prerequisites to a suit in this court. *See Maropakis,* 609 F.3d at 1327 ("This Court has found that jurisdiction thus requires both a valid claim and a contracting officer's final decision on that claim.") (citation omitted); *England v. Swanson Grp., Inc.,* 353 F.3d 1375, 1379 (Fed.Cir.2004) ("We have held, based on the statutory provisions [of the CDA], that the jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim." (citing *James M. Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1541–42 (Fed.Cir.1996))).

 In this suit, DMS seeks to recover more than $100,000 in damages under a breach-of-contract theory. Defendant argues that this suit must be dismissed because it was not preceded by the submission of a certified claim to the contracting officer, and DMS does not dispute that it never submitted a proper claim to the contracting officer. Nonetheless, the court will examine the letter DMS sent to the Navy in January 2010 to determine whether it might provide the jurisdictional basis for a suit under the CDA. For the reasons discussed below, the court concludes that it does not.

As noted above, a claim is defined as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101. In its complaint, DMS requests $614,142.40 in damages from the government. Compl. at 6. The January 2010 letter to the contracting officer does not demand that sum of money, or any sum certain. Nor does it demand the interpretation or adjustment of contract terms. Instead, the letter demands "[p]ayment of all funds previously billed by DMS but held by the Navy as 'liquidated damages,'" subject to certain specified exceptions. Def.'s Mot. Ex. A at 1. The letter then refers to an attached spreadsheet, *id.,* but defendant asserts that it never received that attachment, Def.'s Mot. at 5, and DMS does not attempt to refute that assertion in its response to the motion to dismiss. The letter also states, in a footnote, that "[a] monetary claim for increased costs of performance by DMS caused by Navy changes, and interference will be tendered separately." Def.'s Mot. Ex. A at 3 n. 1. Defendant denies that it received another claim from DMS, and DMS does not attempt to refute that representation. The court may not exercise jurisdiction over DMS's claim for damages because plaintiff has not submitted a valid claim to the contracting officer demanding such monies. The court further notes that the January 2010 letter was not certified, as required for all claims seeking more than $100,000. 41 U.S.C.A. § 7103(b)(1); 48 C.F.R. § 2.101 (noting that "a written demand or written assertion by the contractor seeking the payment of money

exceeding $100,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act").

DMS has neither alleged nor established that it submitted a certified claim with the contracting officer before commencing this suit. Because the submission of a CDA claim and a final decision on that claim are jurisdictional prerequisites to suit in this court, the court must dismiss DMS's suit for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).[4]

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss, filed October 7, 2011, is **GRANTED;**

(2) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint for lack of subject matter jurisdiction, without prejudice; and

(3) No costs.

---

4. DMS further argues that it is not "prosecuting a claim under the contract," Pl.'s Resp. at 2, and was thus not required to submit a claim to the contracting officer before commencing this suit. Section 7103, however, requires contractors to submit to the contracting officer all claims "relating to a contract." 41 U.S.C.A. § 7103(a).